UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIE E. PAYNE                    :
                                  :
v.                                :    CIV. NO. 3:10CV1565(JCH)
                                  :
MICHAEL J. ASTRUE,                :
COMMISSIONER OF SOCIAL            :
SECURITY                         :

RECOMMENDED RULING

Willie E. Payne brings this action under Section 205(g) of
the Social Security Act, 42 U.S.C. § 405(g), seeking review of a
final decision of the Commissioner of Social Security denying
plaintiff Supplemental Security Income benefits as of July 1,
2007.

Plaintiff claims that the record lacks substantial evidence
to support the Commissioner's findings that plaintiff was not
disabled within the meaning of the Act and that the
Administrative Law Judge ("ALJ") erred as a matter of law.
[doc. #9]. The government moves to affirm the Commissioner's
decision. [doc. #14]. After reviewing the administrative record
in its entirety, the Commissioner's decision is **AFFIRMED.**

I.      **STANDARD OF REVIEW**

The scope of review of a social security disability
determination involves two levels of inquiry.  The court must
first decide whether the Commissioner applied the correct legal

principles in making the determination.  Next, the court must decide whether the determination is supported by substantial evidence.  _Balsamo v. Chater_, 142 F.3d 75, 79 (2d Cir. 1998).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla."  _Richardson v. Perales_, 402 U.S. 389, 401 (1971); _Yancey v. Apfel_, 145 F.3d 106, 110 (2d Cir. 1998).  The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  _Gonzales v. Apfel_, 23 F. Supp. 2d 179, 189 (D. Conn. 1998); _Rodriques v. Califano_, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).  The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  _Dotson v. Shalala_, 1 F.3d 571, 577 (7th Cir. 1993).  The court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings.  In reviewing an ALJ's decision, the court considers the entire administrative record, including new evidence submitted to the Appeals Council following the ALJ's decision.  _Perez v. Chater_, 77 F.3d 41, 46 (2d Cir. 1996).  The court's responsibility is to ensure that a claim has been fairly evaluated.  _Grey v. Heckler_, 721 F.2d 41, 46 (2d Cir. 1983).

Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold the ALJ's decision "creates an unacceptable risk that a claimant will be deprived of the right

to have her disability determination made according to correct legal principles." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1987).  To enable a reviewing court to decide whether the determination is supported by substantial evidence, the ALJ must set forth the crucial factors in any determination with sufficient specificity.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  Thus, although the ALJ is free to accept or reject the testimony of any witness, a finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible review of the record. Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).  Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding.  Peoples v. Shalala, 1994 WL 621922, at *4 (N.D. Ill. 1994); see generally Ferraris, 728 F.2d at 587.


## II.   ADMINISTRATIVE PROCEEDINGS

On December 11, 2007, plaintiff filed an application for SSI payments, which application was denied initially and upon reconsideration. (See Certified Transcript of Administrative Proceedings, dated November 30, 2010 ["R."]  at 43, 44 and 101-106). On December 16, 2008, Plaintiff requested a hearing (R. at

62), which was held April 6, 2010 before ALJ Ronald J. Thomas. (R. at 75). Plaintiff, represented by counsel, appeared and testified at the hearing. (R. at 22-42). On April 30, 2010, the ALJ issued a decision denying plaintiff benefits. (R. at 4-21). The Decision Review Board ("DRB") selected the ALJ's decision for review. (R. at 1). However, the DRB did not complete its review of plaintiff's claim within the prescribed 90 days, rendering the ALJ's April 30, 2010 decision the final decision of the Commissioner, subject to judicial review.  (R. at 1).  Plaintiff, represented by counsel, has appealed to this Court, seeking review and reversal of the Commissioner's decision. Defendant moves to affirm the Commissioner's decision.

### III.  SUBSTANTIAL EVIDENCE

#### A.          Plaintiff's Testimony

At the time of the hearing, Plaintiff was 54 years of age. (R. at 25). Plaintiff married in January of 2010 and lives with his wife. (R. at 25-27). Plaintiff testified he met his new wife in 2008 or 2009 while "hanging out" at the park at the Franklin Street Projects. (R. at 36).  Plaintiff's wife does not work due to a disability. (R. at 27). Plaintiff has nine children from different mothers (R. at 28).

Plaintiff last worked in 2007 doing maintenance work for Tempco Building Maintenance. (R. at 30). At that job, plaintiff was

let go because he could not keep up with the moving around of loading trucks and dollies due to his neck and back pain. (R. at 31). Between 2003 and 2005, plaintiff worked for the Journal Register, first in the mail room and later in maintenance. (Id.). Plaintiff was incarcerated from 2001 through 2003, and prior to that in the 1970s and from 1999-2001. (R. at 32). Plaintiff's multiple incarcerations stemmed from charges related to his use of drugs. (Id.). Plaintiff testified that since 1999 he has been clean of drugs and sober. (R. at 32-33).

Plaintiff testified he is unable to work because of a number of impairments. Plaintiff testified that his diabetes causes arthritis, which in turn produces neck and back pain, pain down his left arm and fingers and caused his toe to be amputated. (R. at 33). Plaintiff testified he takes Metformin and Glipizide for his diabetes and Gabapentin and Motrin for his arthritis. He testified that his "neck never stops hurting". (R. at 35).

Plaintiff testified that he was recently given a cane and shoes with insoles. (R. at 36). At home, he can make the bed and passes his time watching television. (R. at 37). He does not do any yard work or grocery shopping. He testified he does not visit or see his kids frequently. (R. at 37-38).

As for limitations imposed by his alleged disability, plaintiff testified that he is limited to walking a block, can stand in place for about five minutes and can lift up to a gallon of milk. (R. at 40). He testified he cannot write for very long

and that he suffers from decreased sensation in his feet, which affects his ability to walk. (R. at 39).

**B.  Medical Records**

The medical evidence in this case begins in 2007 and continues through 2010.

**1.  Physical**

**Hill Health Center**

In 2007, plaintiff visited Hill Health Center seeking a refill prescription for Viagra and Motrin. (R. at 187). Records indicate that he reported no pain at the unscheduled visit. (Id.).

In May 2008[1], plaintiff visited Hill Health complaining of lower back and hip pain. (R. at 292). He visited again in June, complaining of hip, knee and back pain. X-rays taken on June 19, 2008, revealed "degenerative changes of the cervical spine, which is most prominent at C4-C5" (r. at 283-284) and "worsening of degenerative disc disease at L4-L5 with osteophyte formation, sclerosis, and disc space narrowing" (r. at 282).

In July 2008, plaintiff's medical provider, Gary Spinner, a physician's assistant, completed a medical report. (R. at 269). Plaintiff was diagnosed with type 2 diabetes and low back pain, which, according to PA Spinner, would render plaintiff unable to work for six months or more. (Id.). It was noted in the report

_____
[1] On a visit in April 2008, where plaintiff reported experiencing no pain, the provider noted that plaintiff was "questioning disability papers". (R. at 295).

that plaintiff's diabetes was controlled, yet "back and neck pain prevents exertional physical work requiring prolonged bending or lifting, pending evaluation." (R. at 269). Spinner opined that patient can occasionally lift and carry up to ten pounds, use both hands for repetitive actions, and occasionally squat, crawl, climb, never bend and continuously reach. (R. at 271). No mental health history or limitations were reported. (R. at 273-278).

In September 2008, and then again in December 2008, plaintiff went to Hill Health complaining of lower back, neck and shoulder pain going down his arm. At both scheduled visits, plaintiff requested medication refills. (R. at 288-289).

In March 2009, plaintiff visited PA Spinner for a follow-up regarding complaints of chronic pain in joints and numbness/tingling in all extremities. (R. at 302). The PA noted that plaintiff had missed his "EMG/NCT on 2/2/09. He missed his podiatry appt, but rescheduled himself for 4/1/09". (Id.). Regarding plaintiff's diabetes, it was noted that plaintiff had a "poor diet" and was referred to a nutritionist. (R. at 303). In May 2009, referred by PA Spinner, plaintiff underwent an electromyography. (R. at 305). Dr. Goldstein, who interpreted the study, noted that there is "electrodiagnostic evidence of left C5 radiculopathy[2]" and "evidence of mild median neuropathy at the left wrist." (Id.).

---

[2] A pinched nerve in the neck which can cause numbness, tingling, deep aching or electrical shooting pain. (R. at 309).

PA Spinner submitted a letter, dated February 10, 2009, to plaintiff's attorney. (R. at 314). He concluded that, "Mr. Payne is unable to do any work that would require a physical capacity to do any extensive lifting, bending, or activity that would require frequent movement of his neck." (Id.). He further opined that "Mr. Payne's cognitive skills are substantially limited, and it is not felt that he has the capacity to carry out the responsibilities of a full-time job, even one that would not require physical activity." (Id.).

**Dr. Mongillo- disability evaluation**

On February 28, 2008, Dr. Mongillo physically examined plaintiff and observed that, plaintiff "had very well-developed musculature. He walks with a stiff gait. He leaned forward, shuffled a little bit, no focal abnormalities. He did not use any assistive device to ambulate." (R. at 204-205). He concluded that plaintiff "has arthritis in his neck and back, which does cause him to have some stiffness and some loss of range of motion", but that he "certainly could do sedentary and light work." (Id.).

**Dr. Bernstein- RFC**

On March 6, 2008, plaintiff underwent a physical residual functional capacity assessment by Dr. Bernstein. (R. at 207). He concluded that due to plaintiff's neck and back pain, plaintiff possessed the following exertional limitations: he could

occasionally lift no more than 20 pounds, frequently lift no more than 10 pounds, stand or walk with breaks about 6 hours in an 8 hour workday. (R. at 208). Dr. Bernstein, in support of his conclusions, stated that the "[c]laimant has a longstanding neck and back pain, but no laboratory exams to evaluate same in MER. He has diet managed Diabetes, but no evidence of end-organ damage from it." (Id.). Aside from some noted postural limitations, Dr. Bernstein found plaintiff had no other limitations, i.e. visual, communicative, manipulative, environmental, observing that the "symptoms are not fully supported by MER." (R. at 208-212).

**Dr. Waldman- RFC**

In August 2008, Dr. Waldman evaluated plaintiff for an additional physical residual functional assessment. (R. at 235). Dr. Waldman found the same exertional limitations as Dr. Bernstein.  (R. at 236). Contrary to Dr. Bernstein, addressing the non-exertional limitations, Dr. Waldman opined that plaintiff could never climb ladders, ropes or scaffold, and that he could occasionally stoop or crouch for less than one-third of the time. (R. at 237). Dr. Waldman also found that plaintiff's ability to reach overhead was limited due to his neck pain and stiffness. (R. at 238).

**Hospital of Saint Raphael**

In May 2009, plaintiff admitted himself to the emergency department for upper extremity pain and cervical radiculopathy.

(R. at 309). He was instructed not to engage in strenuous
activity. (R. at 310). Again, in December 2009, he admitted
himself through the emergency department for back pain, cervical
radiculopathy, hypertension, diabetes and knee injury. He was
prescribed Vicodin for pain.(R. at 315). Radiographs of the
cervical and lumbosacral spine revealed "[m]ild degenerative disc
disease from C3-C7" and "[d]egenerate disc disease L3-L4 and L4-
L5." (R. at 320).

### 2. Mental

**Jesus Lago, M.D.**

Dr. Lago examined the plaintiff in January 2008. (R. at
188). He opined that plaintiff's insight and judgment were fair
with good impulse control. (R. at 189). He stated that
plaintiff's "cognition was intact and he was oriented times 3."
(R. at 189). Dr Lago recommended that "[p]sychiatrically, Mr.
Payne is capable of handling his affairs and interacting
appropriately with co-workers, supervisors and the public."
(Id.).

**Dr. Leveille**

In January of 2008, Dr. Leveille, PsyD, undertook a
psychiatric review of plaintiff. He concluded that plaintiff had
no medically determinable mental impairment. (R. at 190). Dr.
Leveille noted that the "clamant likewise denies any s/s of a
psychiatric impairment". (R. at 202).

**Dr. Brown**

Plaintiff was psychiatrically reviewed again in July of 2008 by Adrian Brown. (R. at 218). Giving weight to Dr. Lago's psychiatric evaluation, he too concluded "there is no medically determinable psych condition noted at this time." (R. at 230). He stated, "Clmtn state he is not depressed and mentally feels sine, he is eating and sleeping well". (Id.).

## IV. The ALJ's decision

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. § 423(a)(1)(E). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Determining whether a claimant is disabled requires a five-step process. See 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently working. See 20 C.F.R. § 404.1520(a)(4)(I). If the claimant is currently employed, the claim is denied. See 20 C.F.R. § 404.1520(b). If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. See 20 C.F.R. § 404.1520(c). If the claimant is found to have a severe

impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"]. See 20 C.F.R. § 404.1520(d); Bowen v. Yuckert, 482 U.S. 137 (1987); Balsamo, 142 F.3d at 79-80. If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. See 20 C.F.R. § 404.1520(d); see also Balsamo, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. See 20 C.F.R. § 404.1520(e)-(f). If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. See Balsamo, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. See 20 C.F.R. § 404.1520(f); see also Balsamo, 142 F.3d at 80 (citations omitted).

The Commissioner may show a claimant's Residual Functional Capacity by using the Medical-Vocational Guidelines set forth in the SSA Regulations ["the Grid"]. See 20 C.F.R. § 416.945(a) (defining "residual functional capacity" as the level of work a claimant is still able to do despite his or her physical or mental limitations). The Grid places claimants with severe

exertional impairments, who can no longer perform past work, into employment categories according to their physical strength, age, education, and work experience; the Grid is used to dictate a conclusion of disabled or not disabled. A proper application of the Grid makes vocational testing unnecessary.

However, the Grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders, are not covered. See 20 C.F.R., Part. 404, Subpart P, App. 2, 20 C.F.R. § 200.00(e)(1). If the Grid cannot be used, i.e., when nonexertional impairments are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is generally required to support a finding that employment exists in the national economy which the claimant could perform based on his residual functional capacity. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

Following the five step evaluation process, ALJ Thomas found that plaintiff is not disabled because he has a residual functional capacity to perform light work with certain limitations and that there are such jobs that exist in significant numbers in the national economy. At the first step, ALJ Thomas found that the claimant had not engaged in substantial gainful activity since December 11, 2007. (R. at 9). At step two, the ALJ found that the plaintiff suffered from the following severe medically determinable impairments: degenerative disc disease of the lumbar spine and of the cervical spine with

13

radiculopathy, diabetes mellitus with bilateral peripheral neuropathy and status/post toe amputation. (R. at 9). The ALJ found that the claimant's history of alcohol and drug abuse did not constitute a severe medically determinable impairment given the plaintiff's testimony that he is clean and sober since 1999 and the medical evidence that plaintiff is able to follow commands and instructions in addition to interacting appropriately with the public. (R. at 10). At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.). Specifically, the ALJ found that there is no objective medical evidence that plaintiff suffers from a gross anatomical deformity and chronic joint pain and stiffness or that he suffers from a compromise of the nerve root or the spinal cord which would either result in an inability to ambulate effectively or perform fine and gross movements effectively. (R. at 11). Addressing plaintiff's diabetes, the ALJ concluded that there is insufficient medical evidence that plaintiff suffers from diabetes with (A) neuropathy in two extremities, (B) acidosis occurring at least on average of once every two months or (c) retinitis proliferans[3], as required by Listing 9.08. At step four, the ALJ concluded that plaintiff has the residual

---

[3] Defined as the "neovascularization of the retina extending into the vitreous humor", 1539 Stedman's Med. Dictionary (26th ed.).

functional capacity to perform light work with the additional limitations that plaintiff can only occasionally bend, stoop, twist, squat, kneel, crawl, climb or balance, and requires a supervised, low stress environment. (R. at 11). In arriving at this conclusion, the ALJ considered plaintiff's symptoms, applying the two-step process. At step one, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements about the intensity, persistence, and limiting effects are not credible to the extent they are inconsistent with or unsupported by the objective medical evidence." (R. at 12).

The ALJ found that the plaintiff's testimony regarding his socialization, which led to his recent marriage, in addition to evidence that the plaintiff had been looking for work in 2008, undermined plaintiff's testimony that his impairments prevent him from sustaining work in any capacity. (R. at 12). Further, the ALJ found that the objective evidence failed to support the degree of functional limitation alleged by the claimant. (Id.).

For the fifth and final step of the evaluation, ALJ Thomas concluded that considering plaintiff's RFC, age, education and work experience, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and therefore

plaintiff has not been under a "disability,"[4] as defined by the
Social Security Act, since the application was filed in December
2007. (R. 15-16).

## V.    DISCUSSION

Plaintiff contends that the ALJ made several crucial errors
in denying him Supplemental Security Income benefits. First, he
argues that the ALJ erred in applying the medical-vocational
guidelines. Second, he argues that the ALJ failed to follow the
treating physician rule. And, third, he argues that the ALJ
failed to properly evaluate Mr. Payne's credibility.

The Court addresses each argument in turn.

### A. Medical Vocational Guidelines

Plaintiff argues that the non-exertional limitations in the
ALJ's RFC finding precluded him from applying the Grids, thus
requiring him to consult a vocational expert. Here, the ALJ found
that the claimant had the residual functional capacity to perform
light work and the ALJ did not rely on vocational testimony.
Rather, he applied the GRID rule 204.00 to find that plaintiff
was not disabled.  The defendant correctly argues that vocational
testimony is not required in every case involving non-exertional

---

[4] The Social Security Act defines "disability" as the "inability
to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 423(d)(1)(A).

impairments.  [doc. #14-1, at 6-7].

"The mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Bapp, 802 F.2d at 603.  It is only "if a claimant's non-exertional impairments 'significantly limit the range of work permitted by this exertional limitation' [that] the grids obviously will not accurately determine disability status. . . . " Id. (quotations omitted).  "By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 605-06.

The Court finds that the testimony of a vocational expert was not needed here, where the non-exertional limitations present -occasionally bending, stooping, twisting, squatting, kneeling crawling, climbing or balancing, in addition to a supervised low stress environment- failed to "significantly diminish" the unskilled employment opportunities contemplated by the GRIDS. Unskilled work is work which needs little or no judgment to do, simple duties that can be learned on the job in a short period of time.  20 C.F.R. 416.968.  "The basic mental demands of competitive remunerative unskilled work include the abilities . . . to understand, carry out and remember simple instructions . . . ." Social Security Ruling (SSR) 85-15.  SSR 85-15 explains that

the occupational base for unskilled work is not eroded unless
there is evidence of a substantial loss in the ability to perform
these basic work-related activities. The ALJ considered the
evidence of plaintiff's limitations, including any mental
limitations. The record reveals that Plaintiff has an average
memory and intellectual ability, which supports the ALJ's finding
that plaintiff could perform unskilled work as set forth in the
guidelines. See Garcia v. Astrue, 2010 WL 1072350 (D. Conn. Feb,
18, 2010) (rejecting plaintiff's argument that the ALJ should
have called a vocational expert the ALJ restricted plaintiff to
performing light work in a supervised, low stress environment.)

### B. Treating Physician Rule

The plaintiff next argues that the ALJ failed to apply the
"treating physician rule" in that controlling weight was not
given to the opinions of Physician's Assistant Spinner as co-
signed by Dr. Elrington. Prior to 1991, Second Circuit case law
established a so-called "treating physician rule", giving
substantial weight to the treating physician's opinion as against
other medical evidence. See Schaal v. Apfel, 134 F.3d 496, 503
(2d Cir. 1998); Schisler v. Sullivan, 3 F.3d 563, 565 (2d Cir.
1993) (citing Bluvband v. Heckler, 730 F.2d 886, 892-93 (2d Cir.
1984)). However, as plaintiff conceded, "the opinion of Mr.
Spinner cannot be afforded controlling weight since he is not an
acceptable medical source according to the Regulations (20 C.F.R.
§ 416.913; 20 C.F.R. § 404.1527(a)(2)". [doc. #19-1, at 15].

Rather, pursuant to 20 C.F.R. § 404.1527(b) the ALJ is accorded much discretion in weighing the opinions of PA Spinner "together with the rest of the relevant evidence."

The Court finds that the ALJ properly considered the opinion of PA Spinner, and set forth specific reasons for giving his opinion "little weight", which reasons find support in the record. (R. at 14). Specifically, the Court finds substantial evidence in the record to support the ALJ's finding that plaintiff underwent "scant and conservative treatment for his musculoskeletal conditions and diabetes mellitus" at the time of PA Spinner's opinion. (R. at 14).

Accordingly, the Court finds that the ALJ did not err in failing to give PA Spinner's opinion controlling weight.

**C.        Credibility**

Plaintiff next argues that the ALJ failed to properly evaluate plaintiff's credibility.  The ALJ found that plaintiff has the residual functional capacity to perform light work, except that he can occasionally bend, stoop, twist, squat, kneel, crawl, climb, or balance and requires a supervised, low stress environment. (R. at 11). In arriving at that conclusion, the ALJ determined that, based on the entire record, plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements about the intensity, persistence, and limiting effects are not credible to the extent they are inconsistent with or unsupported

by the objective medical evidence (SSR 96-7p)." (R. at 12).

In making a disability determination, all symptoms, including pain, must be considered. 20 C.F.R. § 404.1529(a). In evaluating subjective symptoms, a claimant's statements are to be considered only to the extent that they are consistent with medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, statements about the intensity and persistence of pain and symptoms will not be rejected simply because the objective medical evidence does not support the claim. 20 C.F.R. § 404.1529(c)(2). Other factors which will be considered include the claimant's medical history, diagnoses, daily activities, prescribed treatments, efforts to work, and any functional limitations or restrictions caused by the symptoms. See 20 C.F.R. § 404.1529(c)(3). In addition,

> [t]he determination or decision
> must contain specific reasons for
> the finding on credibility,
> supported by evidence in the case
> record, and must be sufficiently
> specific to make clear to the
> individual and to any subsequent
> reviewers the weight the
> adjudicator gave to the
> individual's statements and the
> reasons for that weight.

SSR 96-7p[5].

The Court finds that the ALJ considered the entire record and that his conclusion with regard to the intensity, persistence, and limiting effects of plaintiff's symptoms is

---

[5]Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html.

supported by substantial evidence. With regard to the symptoms of neck and back pain and diabetes, and the alleged impact these posed to the plaintiff, the ALJ did not find "the claimant's testimony regarding the degree of limitation imposed by this impairments to be credible". (R. at 12). The ALJ noted that the plaintiff has a poor work history, yet plaintiff is able to socialize with friends, as evidenced by his recent marriage. (Id.). Additionally, there is evidence that plaintiff in 2008 reported that he was looking for work, further eroding plaintiff's credibility as to his subjective belief that the he is not able to work. (R. at 12, ex. 2F).

Objectively, the ALJ pointed to the fact that plaintiff had received little treatment in 2007 for the alleged back and neck pain, caused by an automobile accident in 2007, having visited Hill Health Center to obtain Viagra and Motrin refills. (R. at 12). This finds support in the record, as does the fact that despite self-reports of severe pain, the plaintiff's treatments were conservative. For example in 2008, complaining of a pain that was a "seven to eight out of ten", the plaintiff was only taking 800 mg of Ibuprofen. (R. at 13). And, later in 2009, having reported a pain of eight out of ten, the plaintiff was only taking Motrin and did not receive the steroid injection that was recommended. (R. at 13).

Further, the opinions of Drs. Bernstein and Waldman, to which the ALJ gave great weight, are supported by the record and

in turn support the functional capacity for light work. (R. at 14). Finally, contrary to the plaintiff's contention, the ALJ did give some weight to the plaintiff's allegations of pain, having concluded that the "record supports a limitation to a supervised, low stress environment". (R. at 14).

The Court finds that the ALJ throughly analyzed plaintiff's credibility -having devoted three and a half pages to this step alone- and gave concrete reasons for not crediting Mr. Payne's testimony entirely. Therefore, the ALJ's application of the legal principles regarding the plaintiff's symptoms and credibility was not error. An ALJ must use his discretion to determine a claimant's RFC and limitations on his RFC by evaluating and weighing the credibility of all testimony against medical and other evidence. <u>Genier v. Astrue</u>, 606 F.3d 46 at 49 (2d Cir. 2010).

Therefore, the Court finds no cause for reversal or remand.


**IV.   CONCLUSION**

Plaintiff's Motion to Reverse the Decision of the Commissioner or to Remand [doc. #9] is **DENIED** and Defendant's Motion to Affirm the Decision of the Commissioner [doc. #14] is **GRANTED.**

Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. Failure to object within fourteen (14)

days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1);
Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure;
Rule 2 of the Local Rules for United States Magistrates; <u>Small v.
Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989) (per curiam);
<u>FDIC v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).


        SO ORDERED at Bridgeport this 5th day of May 2011.

                        /s/
                        HOLLY B. FITZSIMMONS
                        UNITED STATES MAGISTRATE JUDGE