# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIE E. PAYNE, | : | CIVIL CASE NO. |
|    Plaintiff, | : | 3:10-cv-1565 (JCH) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, COMMISSIONER | : | JUNE 20, 2011 |
| OF SOCIAL SECURITY, | : | |
|    Defendant. | : | |

**RULING RE: PLAINTIFF'S OBJECTION TO RECOMMENDED RULING (Doc. No. 17)**

**I.      INTRODUCTION**

Plaintiff, Willie E. Payne ("Payne"), brings this action pursuant to 42 U.S.C. § 405(g), requesting review of a final decision by the defendant, the Commissioner of the Social Security Administration ("the Commissioner"), that Payne was not entitled to Supplemental Security Income benefits as of July 1, 2007. See Compl. (Doc. No. 1). On May 5, 2011, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling, denying Payne's Motion for Judgment on the Pleadings decision and granting the Commissioner's Motion to Affirm. See Doc. Nos. 9, 14, 16. Payne subsequently objected to Judge Fitzsimmons' Recommended Ruling. See Doc. No. 17. For the following reasons, the court affirms the Magistrate Judge's Recommended Ruling in part and reverses in part.

**II.     STANDARD OF REVIEW**

As a preliminary matter, a district court reviews, de novo, those portions of a Magistrate Judge's Recommended Ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, the Magistrate Judge's Recommended Ruling. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

1

In review of a Social Security disability determination, a court will set aside the decision of an ALJ "only where it is based upon legal error or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence, in this context, means more than a "'mere scintilla.'" See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Rather, substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

"Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). Rather, a court must uphold the ALJ's findings, even if the record "may also adequately support contrary findings on particular issues, . . . so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).

## III. DISCUSSION[1]

Payne raises three specific objections to Judge Fitzsimmons' recommendation. First, Payne argues that the ALJ erred in applying the Medical-Vocational Guidelines in light of the ALJ's finding that Payne is limited to low stress work. See Pl.'s Obj. at 1-2 (Doc. No. 17). Second, Payne argues that the ALJ's finding of Residual Functional Capacity (RFC) was not supported by substantial evidence and did not give appropriate consideration to certain medical evidence. See id. at 2-3. Third, Payne argues that the ALJ improperly evaluated Payne's credibility. Id. at 3-4.

---

[1] The court assumes familiarity with the case. A detailed explication of the underlying facts can be found in Judge Fitzsimmons' Recommended Ruling (Doc. No. 16).

2

A. Application of the Medical-Vocational Guidelines Despite the Limitation to Low Stress Work

The ALJ determined that the record supported a limitation to work in "a supervised, low stress environment . . . defined as requiring few decisions . . . ." Administrative Record ("A.R.") at 14. The ALJ determined, however, that a finding of "not disabled" could still be based on Rule 202.10 of the Medical-Vocational Guidelines Rule 202.10 ("Grid Rule 202.10"), 20 C.F.R. Pt. 404, Subpart P, App. 2, § 202.10. A.R. at 16. Grid Rule 202.10 is based upon the availability of light, unskilled work. See 20 C.F.R. Pt. 404, Subpart P, App. 2, 202.00(a) (indicating that the rule is based upon "1,600 separate sedentary and light unskilled occupations"). The ALJ determined that Payne's limitation to a low stress environment did "not significantly erode the occupational basis at the light and less included exertional levels," and that he could therefore rely on Grid Rule 202.10 to find that Payne was not disabled. A.R. at 16.

Payne argues that the ALJ's reliance on Grid Rule 202.10 was improper, because light, unskilled work is not necessarily "low stress" work. Pl. Obj. at 1-2. Additionally, Payne notes that there was evidence that Payne had significantly limited cognitive skills that interfere with the responsibilities of full-time work. Pl. Obj. at 2 (citing A.R. at 314). Payne argues that, in light of the limitation to a low stress environment and the evidence of mental impairment, the ALJ could not rely on the Medical Vocational Guidelines and should have considered additional evidence to determine whether Payne was disabled.

"The mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."

3

Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Instead, the ALJ must consider additional evidence only "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines . . . ." Id. "By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. at 606 (footnote omitted).

Payne's argument is based primarily on the Commissioner's Policy Statement SSR 85-15, which provides:

> The reaction to the demands of work (stress) is highly individualized . . . . Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

1985 WL 56857, *6. This Policy Statement does not say that a limitation to a "low stress" environment necessarily indicates a substantially limited ability to perform unskilled labor. Rather, the Statement provides that the impact of stress is "highly individualized," id., thus indicating that it should be considered on a case-by-case basis.

In this case, the ALJ did not find that Payne cannot handle stress generally. Rather, the ALJ found that the record supported a limitation to a supervised, low stress environment "defined as requiring few decisions." A.R. at 14. The ALJ indicated that in stating this limitation, he was "giving some weight to the subjective complaints of the claimant regarding his allegations of pain." Id. The ALJ also found that there was an

4

absence of evidence supporting a more significant cognitive or psychological impairment. Instead, after reviewing the psychiatric and medical opinions in detail, the ALJ determined that Payne had:

> no restriction in activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is not severe . . . .

Id. at 10.

The record supports the ALJ's conclusion that Payne does not have a more serious mental impairment or susceptibility to stress. See, e.g., A.R. at 188-89 (psychiatrist's report indicating that "Payne said he is not depressed. Mentally he feels fine;" and finding that Payne "was quite engageable . . . clear, coherent and logical during the interview;" "able to follow simple commands and simple instructions . . . [and] the flow of the interview quite well;" and "capable of handling his affairs and interacting appropriately with co-workers, supervisors and the public"); id. at 190, 218 (psychiatrist's reports indicating "no medically determinable impairment"); id. at 234 (physician's report indicating that Payne was "calm, cooperative, and fair in his responses . . . with average memory and intellectual ability").

The only indication in the record that Payne had any mental impairment is a letter signed by Physician's Assistant Spinner and Dr. Carol Elrington, MD, which states that Payne's "cognitive skills are substantially limited, and it is not felt that he has the capacity to carry out the responsibilities of a full-time job, even one that would not

require physical activity." A.R. at 314. The letter does not explain the nature of the alleged cognitive limitation or the basis for this assessment, see id., and Payne has not cited any other evidence that might explain and support this assessment. The ALJ appropriately determined that this opinion was unsupported and in conflict with the findings of the examining and consulting psychiatrists. Id. at 10. Therefore, even if the court were to assume that this letter expressed the opinion of a treating physician, see infra at 8-9, the ALJ was free to give it non-controlling weight and to resolve the conflicts in the manner that he did. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (treating physician's opinions were not entitled to controlling weight where they were "not particularly informative and were not consistent with those of several other medical experts"); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

The ALJ's determination that Payne was limited to a "low stress environment . . . defined as requiring few decisions," A.R. at 14, did not preclude the ALJ's reliance on the Guidelines. The ALJ made a reasonable, individualized determination that this limitation did not have a significant impact on the occupational base. See id. Unskilled work, which forms the occupational basis for Grid Rule 202.10, is defined as work requiring few significant decisions. See 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Thus, the ALJ reasonably determined that a limitation to work requiring few decisions did not indicate that Payne "is unable to perform the full range of employment indicated by the medical vocational guidelines," Bapp, 802 F.2d at 603. See Garcia v. Astrue, 3:09-cv-319, 2010 WL 1072350, *4 (D. Conn. Feb 18, 2010)

(affirming the ALJ's use of the Grids where the ALJ likewise found that the claimant was limited to work in a "supervised, low stress environment" and specifically determined that this limitation "virtually leaves the light occupational base intact").  Therefore, Payne's first objection to the Recommended Ruling is overruled.

B.    Weight of the Medical Opinions

Payne next objects to Magistrate Judge Fitzsimmons' determination that the ALJ appropriately weighed the medical evidence regarding Payne's non-cognitive limitations.  In their February 2009 opinion, P.A. Spinner and Dr. Elrington opined that Payne had various other medical conditions and physical limitations, in addition to the cognitive impairment discussed above.  See A.R. at 314.  In particular, Spinner and Elrington state that Payne has various spinal and nerve conditions that prevent Payne from "any work that would require a physical capacity to do any extensive lifting, bending or activity that would require frequent movement of his neck."  Id.  Additionally, in July 2008, Spinner also signed an assessment stating that Payne could not perform work that involved bending or lifting more than 10 pounds.  A.R. at 269-78.  That assessment also appears to be signed by a doctor, whose name is illegible and who has not been identified by the parties.  A.R. at 278.  As evidence supporting these opinions, Payne cites Spinner's treatment notes from Payne's visits to Hill Health Center in 2008 and 2009, and various MRI Reports, an electromyography study, and a radiology study, which were conducted between June 2008 and January 2010.  See A.R. at 279-313, 315-326.  Payne argues that the ALJ did not give appropriate weight to these opinions and supporting evidence.  See Pl. Obj. at 2-3; Pl. Mem. (Doc. No. 9-1) at 11-15.

7

The ALJ considered the July 2008 and February 2009 opinions, but gave them each little weight. A.R. at 14. The ALJ deemed both of the opinions to be opinions of Spinner, although the ALJ acknowledged that the February 2009 opinion was "co-signed by Dr. Carol Elrington." Id. In rejecting the July 2008 assessment, the ALJ relied on what he saw as Payne's "scant and conservative treatment." Id. ("As demonstrated above, the claimant had scant and conservative treatment for his musculoskeletal conditions and diabetes mellitus at that time of [the July 2008] opinion, and, therefore, the undersigned finds it to be inconsistent with and unsupported by the objective medical evidence"). With respect to the February 2009 opinion, the ALJ described only its general conclusion regarding the extent of Payne's inability to work. Id. at 14-15. The ALJ dismissed that conclusion very briefly, stating: "For the reasons previously discussed, the undersigned finds that such degree of limitation is not objectively supported by the record evidence." Id. at 15.

As an initial matter, the parties dispute the amount of weight that should have been given to the opinions. It is well-established that an ALJ must give controlling weight to a treating physician's opinion as to "'the nature and severity'" of a claimant's impairments, if the opinion is well supported. See Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). The parties agree that, because Spinner is a physician's assistant, his opinion, standing alone, is not entitled to the weight given to the opinion of a treating physician. See Pl. Mem. at 15; 20 C.F.R. § 416.913(a) (list of "acceptable medical sources" for purposes of establishing impairment, which includes physicians, but not physician's assistants); 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists

8

or other acceptable medical sources . . . .").

The parties dispute whether the additional signature of a physician brings the opinions within the scope of the treating physician's rule. The controlling weight given to the opinion of a treating physician is based upon the insight that may be gained through the direct and extended relationship between a treating physician and patient. See 20 C.F.R. § 404.1527(d)(2). The Commissioner argues that neither Dr. Elrington, nor the unidentified doctor on the July 2008 opinion, is a "treating physician" because there is no evidence that either was ever directly involved in the assessment or treatment of Payne. Payne has not responded with citation to any such evidence. Because the court has not been made aware of any evidence that either doctor ever acted as Payne's treating physician, or that Spinner worked in close consultation with either doctor on the treatment of Payne, the court concludes that the ALJ was not required to give these opinions the controlling weight afforded to a treating physician's opinion. See Vester v. Barnhart, 416 F.3d 886, 890 (8th Cir. 1990) (holding that ALJ was not required to treat a counselor's opinion, co-signed by a psychiatrist, as a treating physician's opinion where there was no evidence that the psychiatrist treated the claimant); see also Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (holding that the opinion of a nurse practitioner co-signed by a physician could be considered as an opinion of a treating physician, because she "worked closely under the supervision" and "was acting as an agent" of that physician).

This does not end the issue of the weight to be given to the two opinions. The ALJ appears to have deemed the opinions to be solely the opinions of Spinner. See A.R. at 14 (describing each opinion as the "opinion of Mr. Spinner, as co-signed by [a

physician]"). If the ALJ did not deem them to be the opinions of the co-signing physicians, it is not clear why. There is no apparent indication that either opinion was not independently considered and endorsed by the co-signing physician. The point is significant because the opinion of even a non-examining physician is entitled to consideration in accordance with the guidelines for evaluating all medical opinions, see 20 C.F.R. § 404.1527(f), whereas the opinion of a physician's assistant is entitled to consideration as an "other source," pursuant to 20 C.F.R. § 416.913(d)(1) (providing that the opinion of a physician's assistant may be used "to show the severity of your impairment(s) and how it affects your ability to work"). The opinion of a physician is entitled to special consideration. See, e.g., Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (The ALJ "is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." (alterations in original; quotation omitted)). The ALJ should have explained whether or not he considered these opinions to be the opinions of an appropriate medical source, and if not, then why. The physician's signature on these opinions would appear to indicate that they are the opinions of appropriate medical sources.

Turning to the substance of the opinions, the court finds that the ALJ's rejection was not adequately explained or supported by substantial evidence. The July 2008 assessment does not appear to contain an explanation of the basis for the conclusions stated therein. However, in the February 2009 letter, Elrington and Spinner opined that Payne had medical conditions affecting his spine and nervous system, limiting his range of motion in his neck and cervical spine. A.R. at 314. They cited the findings of a September 22, 2008 MRI examination, which indicate that Payne has "disc osteophyte

10

complexes, causing severe right and moderate left neuroforminal narrowing," and "mild canal stenosis." Id. They also stated that Payne has persistent neck pain, radiating down his left arm and hand, "radiculopathy," and "peripheral neuropathy, with decreased sensation in his feet." Id. The September 2008 MRI reports do, in fact, use this same terminology, and also refers to "degenerative changes of the cervical spine." Id. at 281, 284-86.[2] In addition, the February 2009 opinion appears to be supported—in the court's non-expert opinion— by various other examinations, including: (a) two June 2008 MRI reports with findings of "worsening of degenerative disc disease [in the lumbar spine] with osteophyte formation, sclerosis, and disc space narrowing," id. at 282, and "degenerative disc space narrowing" in the cervical spine, id. at 283; (b) a May 2009 report from the Electromyography Laboratory of Yale-New Haven Hospital finding "electrodiagnostic evidence of left C5 radiculopathy" and "mild median neuropathy at the left wrist," id. at 305; (c) a May 2009 evaluation at the Hospital of Saint Raphael- Emergency Department finding a pinched nerve in the neck, "also called 'Cervical Radiculopathy'" and recommending "no strenuous activity," id. at 309-10; and (d) a January 2010 radiology study finding "apparent neural foraminal narrowing" and "mild degenerative disc disease" in the cervical spine, "degenerate disc disease" in the lumbar spine, and "cervical radiculopathy," id. at 318, 320-21. In light of these various, diagnostic reports, the February 2009 opinion regarding Payne's neck pain, spinal condition and nerve problems would appear to be supported by the record and entitled to significant weight. See 20 C.F.R. § 404.1527(d)(3), (4) (providing that supportability

---

[2] Oddly, the reports associated with the September 22, 2008 MRI, A.R. at 281, 284-86, appear to be separated by two, one-page reports from a June 19, 2008 MRI or MRIs, A.R. 282-83.

and consistency with the record are factors going to the weight of a medical opinion).

The ALJ stated that he was rejecting the July 2008 opinion as "inconsistent with and unsupported by the objective medical evidence" because Payne had "only scant and conservative treatment . . . at that time of this opinion [sic] . . . ." A.R. at 14. The basis for the ALJ's rejection of the February 2009 opinion is less clearly stated. After describing only that opinion's general conclusion that Payne could not do any work involving extensive lifting, bending, or frequent movement of the neck, the ALJ simply stated: "For the reasons previously discussed, the undersigned finds that such degree of limitation is not objectively supported by the record evidence." A.R. at 14-15. The court cannot find any "reasons previously discussed" that adequately support this rejection of a medical opinion.

First, the ALJ's discussion of the "scant and conservative treatment" received by Payne, see A.R. at 14, was not an adequate basis to reject a medical opinion. A doctor, clinician, or patient might choose "conservative" treatment for a variety of reasons, including the unavailability or the poor outcomes of other treatments. "The ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." Burgess, 537 F.3d at 129 (quoting Shaw v. Chater, 221 F.3d 126,134-35 (2d Cir. 2000) (alterations in Burgess)). Because "scant and conservative treatment" was the only reason cited for rejecting the July 2008 opinion, A.R. at 14, that decision was not adequately supported. Nor can this reason support rejection of the February 2009 opinion.

Second, the ALJ's discussion of the February 2008 one-time examination by Dr.

12

Mongillo and the August 2008 one-time examination by Dr. Alam did not provide an adequate basis for rejecting the February 2009 opinion of Elrington and Spinner. Although Dr. Mongillo concluded that Payne could do sedentary work and light work, Dr. Mongillo noted upon examination that Payne had "tenderness and spasm" and "stiffness" and "decreased range of motion" in the neck, as well as "tenderness and spasm throughout his back, worse in the lumbar region and cervical region." A.R. at 205. Dr. Alam found that Payne had "[g]rossly full range of motion [in the neck]. However, he complains of pain on back of neck and back of right shoulder on doing these maneuvers." Id. at 233. These findings are supportive of the February 2009 opinion, even if the conclusion drawn differs. To the extent that the conclusions reached by these examiners conflict with the assessment of February 2009 opinion, it is particularly significant that neither Dr. Alam nor Dr. Mongillo appears to have had the benefit of the MRI, electromyography, and radiology reports. Any inconsistency could be attributable either to a lack of information on the part of Dr. Alam and Dr. Mongillo, or to a worsening of Payne's condition over time. In short, the February 2009 opinion, based upon an MRI report and apparently supported by numerous other imaging studies, could not reasonably be rejected by citation to earlier, and not clearly inconsistent, reports of doctors who did not have the benefit of any of these studies. See Burgess, 537 F.3d at 132 (holding that the opinions of two doctors who had not read a pertinent MRI report could not be considered to be evidence contradicting the report of a treating physician who did rely on the MRI Report).

Third, the ALJ's discussion of the opinions of non-examining Doctors Waldman and Bernstein is similarly inadequate. Their reports were based on the early, limited

examinations of Dr. Alam and Dr. Mongillo, without consideration of the MRI, electromyography, and radiology reports. An ALJ should not place substantial weight on the opinion of a consulting doctor who has not considered significant diagnostic evidence. See Burgess, 537 F.3d at 132.

Although the ALJ acknowledged that these reports were not based on the full record, the ALJ summarily stated that the "evidence subsequently submitted would not warrant a significant change in the residual functional capacity assessment of the claimant." A.R. at 14. The ALJ provided no explanation for this conclusion. However, in a prior passage, the ALJ drew his own judgments about the significance of the findings in those diagnostic studies, noting that some of them showed "only mild to moderate degenerative disc disease," that "physical examination was largely normal," and that, at one point, Payne reported taking "only Motrin." A.R. at 13 (emphasis added). The ALJ apparently determined these isolated facts to be more indicative of Payne's condition than the September 2008 MRI that showed a "moderate to severe" spinal condition, A.R. at 284, or the June 2008 MRI that showed a "worsening of degenerative disc disease" in the lumbar region, A.R. at 282.

It might be that the ALJ was correct in concluding that the MRI reports and other diagnostic studies from September 2008 through January 2010 do not show a significantly debilitating condition. However, neither the court, nor the ALJ, is competent to render such an opinion. Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."). This is particularly true where the only competent medical opinion that appears to have considered any of that

14

diagnostic evidence—the February 2009 opinion of Spinner and Elrington—viewed one of those MRI reports as revealing a condition that prevents Payne from doing "any extensive lifting, bending or activity that would require frequent movement of his neck." A.R. at 314. "[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Sec. of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (alterations in Balsamo)).

The court concludes that the ALJ failed to explain his rejection of the conclusions in the July 2008 and February 2009 opinions. In so far as the ALJ reached on a contrary conclusion based upon his own judgment about Payne's "conservative treatment" and his own reading of the diagnostic reports, the ALJ's conclusion was not supported by substantial analysis. Therefore, Payne's second objection to the Recommended Ruling is sustained.

However, the court does not grant Payne's request to remand solely for calculation of benefits. The record is incomplete due to the absence of medical opinion addressing the full range of diagnostic tests performed from June 2008 through January 2010. The February 2009 opinion appears to be based on only one of those studies, the September 2008 MRI. "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." Rosa v.

Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (alteration in original)). Because further findings are required to assure proper disposition of Payne's claim, remand for a rehearing is appropriate. Id.

    C.    Evaluation of Payne's Credibility

Payne's final objection to the Recommended Ruling concerns the ALJ's evaluation of Payne's testimony regarding the intensity and persistence of his symptoms. Among the factors cited by the ALJ in discrediting Payne's testimony were the fact that Payne was recently married to a woman he met while socializing and playing cards, and the fact that in January 2008, Payne told a consultant that he was looking for work. A.R. at 12.

The court agrees with Payne that these facts are not sufficient reasons to discredit a claimant's testimony. Neither playing cards, nor getting married shows that Payne is able to work. See Murdough v. Sec. of Health and Human Servs., 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table can scarcely be said to controvert the medical evidence. In short, a claimant need not be an invalid to be found disabled . . . ."). The statement that Payne was "looking for work," reported without any elaboration in the January 2008 notes of an examining doctor, is not a sufficiently reliable basis for discrediting Payne's testimony. Assuming that "looking for work" was actually the phrase uttered by Payne—as opposed to, say, "I'm out of work"—that phrase may have reflected undue optimism; it might have been a euphemism prompted by a twinge of shame; or it could simply have been a poor choice of words. Without more, such as evidence that Payne made

16

significant efforts to obtain employment that would have been inconsistent with his alleged symptoms, this second-hand report is too thin a reed to bear any weight.

The Commissioner correctly notes that these two facts were not the only ones that the ALJ considered in evaluating Payne's credibility. However, one of the other factors that the ALJ relied upon was the supposed absence of medical evidence supporting Payne's testimony. A.R. at 12. Because the court is remanding for further development of the medical evidence, and because Payne's credibility should be determined on the basis of the full record, the court sustains Payne's third objection. On remand, the ALJ should reevaluate Payne's credibility in light of the new record and in a manner consistent with this Ruling.

## IV. CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling (Doc. No. 16), that Ruling is **AFFIRMED, ADOPTED, and RATIFIED** in part. Plaintiff's Objection to the Magistrate Judge's Recommended Ruling (Doc. No. 17) is **SUSTAINED** with respect to the second and third objections. Accordingly, defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 14) is **DENIED**, and plaintiff's Motion for Judgment on the Pleadings (Doc. No. 9) is **GRANTED** in so far as it seeks remand for a new hearing. **SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of June, 2011.

                         /s/ Janet C. Hall
                         Janet C. Hall
                         United States District Judge